**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DIANE TONGUETTE,**

        **Plaintiff,**

        **v.**

**SUN LIFE AND HEALTH INSURANCE**
**COMPANY (U.S.), et al.,**

        **Defendants.**

        **Case No. 2:12-cv-00006**
        **JUDGE GREGORY L. FROST**
        **Magistrate Judge Elizabeth P. Deavers**

**OPINION AND ORDER**

This matter is before the Court for consideration of the following filings:

(1) a motion for judgment on the administrative record (ECF No. 30) filed by Sun Life

and Health Insurance Company (U.S.) ("Sun Life");

(2) a motion for judgment on the administrative record (ECF No. 32) filed by LoBue

Associates, Inc. Health & Welfare Plan and LoBue Associates, Inc. ("the LoBue Defendants");

(3) a combined motion for judgment on the administrative record and motion for

summary judgment (ECF No. 33) filed by Plaintiff, Diane Tonguette ("Tonguette");

(4) a combined memorandum in opposition to the motions for judgment on the

administrative record field by Sun Life and the LoBue Defendants (ECF No. 40) filed by

Tonguette;

(5) a memorandum in opposition to Tonguette's motion for judgment on the

administrative record (ECF No. 37) and an amended memorandum in opposition to Tonguette's

motion for judgment on the administrative record (ECF No. 39), both filed by Sun Health;

(6) a memorandum in opposition to Tonguette's motion for judgment on the

administrative record (ECF No. 38) filed by the LoBue Defendants;

(7) a reply memorandum to Tonguette's memorandum in opposition (ECF No. 41) filed by Sun Health;

(8) a reply memorandum to Sun Health's memorandum in opposition (ECF No. 42) filed by Tonguette; and

(9) a reply memorandum to the LoBue Defendants' memorandum in opposition (ECF No. 43) filed by Tonguette.

For the reasons that follow, the Court finds that part of Sun Life's motion for judgment on the administrative record that targets Count I to be well taken and finds the rest of the motion targeting other claims to be moot.  (ECF No. 30.)  This Court also finds that part of the LoBue Defendants' motion for judgment on the administrative record that targets Count I to be well taken and finds the rest of the motion not well taken on non-substantive grounds.  (ECF No. 32.)  The Court then finds Tonguette's motion for judgment on the administrative record not well taken and finds her motion for summary judgment not well taken on non-substantive grounds.  (ECF No. 33.)  Additionally, the Court orders additional summary judgment briefing.

## I.  Background

Del Tonguette began working for LoBue Associates, Inc. in August 2009.  He was a participant in the company's life insurance benefits plan, which provided him with a life insurance policy.  Del Tonguette named Plaintiff, Diane Tonguette, the policy beneficiary.  In October 2009, Del Tonguette's employment with LoBue Associates, Inc. ended.  Under the plan, Del Tonguette was able to convert his group life insurance coverage into an individual life insurance policy within a 31-day conversion period.  The policy provides that if Sun Life or LoBue Associates, Inc. failed to provide a former employee such as Del Tonguette with notice of

this right to convert, then the conversion period was extended for an additional 15 days after

notice was given up to 60 days after the expiration of the initial conversion period.  Additionally,

the policy provides that if a participant were to die during the conversion period, a claim could

be made for the death benefit even if the participant had not applied for a conversion policy.

Neither Sun Life nor the LoBue Defendants gave Del Tonguette notice of his right to convert his

life insurance coverage.  (ECF No. 31-1, at Page ID # 303.)  Del Tonguette then died during the

extended conversion period.  Sun Life denied Tonguette's subsequent claim for death benefits,

providing the following rationale:

> In order to be eligible [for coverage under the plan], Mr. Tonguette would have had
> to submit an application within 31 days of his benefit termination date.  A review of
> our records reveals that Mr. Tonguette did not submit an application for conversion;
> thus no coverage was in force on his date of death.  The Plan further states that claim
> may be made if the employee died within the 31 day period during which insurance
> may be converted to an individual policy.  The Death Certificate issued by the State
> of Ohio shows that Mr. Tonguette passed away  on January 9, 2010 which is outside
> of this 31 day period.  Although the Certificate of Insurance extends the period of
> time in which an employee may exercise his conversion privilege in the event that
> notice of this privilege is not given within the initial 31 day period, it does not extend
> the "Death within the Conversion Period".  [*sic*]  This provision clearly states that
> claim may be made "if you die during the 31 day period during which your insurance
> may be converted to an individual policy".  [*sic*]  As Mr. Tonguette's date of death
> was outside of the 31 day conversion period, no coverage was in force when he
> passed away on January 9, 2010.
>
> We have concluded that Mr. Tonguette ceased to be Actively at Work on October 16,
> 2009 at which time his insurance coverage ceased.  At that time, he was eligible to
> convert his group insurance to an individual policy.  Our records reveal that no
> conversion ever took place and since his date of death was outside of the 31 day
> period in which insurance may be converted, Mr. Tonguette was not covered when
> he passed away on January 9, 2010.  Consequently, no life insurance benefits are
> payable pursuant to the Actively at Work and Termination of Insurance provisions
> as stated in the Plan.

(ECF No. 31-1, at Page ID # 312.)

On January 4, 2012, Tonguette filed the instant action.  Via an amended complaint, she

originally asserted nine claims in an attempt to recover benefits and to obtain other relief under the Employee Retirement Income Security Act ("ERISA") and under Ohio, Nevada, and Rhode Island state law.  (ECF No. 23.)  Both Sun Life and the LoBue Defendants filed motions to dismiss some of these claims.  (ECF Nos. 24, 26.)  In an April 29, 2013 Opinion and Order, this Court dismissed with prejudice Counts II, IV, V, VI, VII, VIII, and IX against Sun Life and dismissed the failure to administer properly component of Count II against the LoBue Defendants.  The claims remaining in this litigation are Count I against the LoBue Defendants and Sun Life, the failure to provide documentation component of Count II against the LoBue Defendants, and Count III against the LoBue Defendants.  All of the parties have filed dispositive motions, which are ripe for disposition.  (ECF Nos. 30, 32, 33.)

## II.  Discussion

### A.  Count I

Tonguette asserts a claim in Count I under 29 U.S.C. § 1132(a)(1)(B), which "gives a participant the right to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' " *Creech v. Unum Life Ins. Co. of N. Am.*, No. 05-5074, 2006 WL 41186, at *2 (6th Cir. Jan. 9, 2006).  It is well settled that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 505-06 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  *See also Calvert v. Firstar Finance. Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005).  If

4

the plan provides the administrator with discretion, then "the highly deferential arbitrary and capricious standard of review is appropriate." *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998). *See also Calvert*, 409 F.3d at 291-92.

The parties agree that the arbitrary and capricious standard applies in the instant case. (ECF No. 30, at Page ID # 214-15; ECF No. 32, at Page ID # 314 (adopting Sun Life's arguments); ECF No. 33, at Page ID # 327.) The Sixth Circuit has explained that, in determining whether this standard applies, a court should remain cognizant that a plan is not required to use certain magic words to create discretionary authority for a plan administrator in administering the plan. *Johnson v. Eaton Corp*., 970 F.2d 1569, 1572 at n.2 (6th Cir. 1992). What is required is "a clear grant of discretion [to the administrator]." *Wulf v. Quantum Chemical Corp*., 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994). The plan involved here provides that Sun Life "is charged with the obligation, and possesses discretionary authority to make claim, eligibility and other administrative determinations regarding these plans." (ECF No. 31-1, at Page ID # 248.) This Court therefore agrees with the parties that the arbitrary and capricious standard applies. *See Solnin v. GE Group Life Assurance Co.*, No. 03-CV-4857 (DRH) (ARL), 2007 WL 923083, at *8-9 (E.D.N.Y. Mar. 23, 2007) (construing identical language and concluding that because the plan grants the discretion to determine eligibility for benefits, the arbitrary and capricious standard applies).

This standard "does not require [the Court] merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Rather, under the arbitrary and capricious standard, a plan administrator's decision will not be deemed

arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (noting that "the arbitrary and capricious standard is the least demanding form of judicial review").  In other words, the Court will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).  *See also Calvert*, 409 F.3d at 292.

In evaluating the record, then, the Court is required to consider only the facts known to the plan administrator at the time the final decision was made to deny benefits.  *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005); *see also Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).  The Court is also required to remain cognizant of the potential inherent conflict of interest that arises given that Sun Life acts as both the decision maker on a claim and the potential payor of that claim.  *Calvert*, 409 F.3d at 292.  With these concerns in mind, the Court shall turn to the merits of Count I.

Analysis of the merits necessarily begins with the relevant plan language.  The plan provides that coverage for an insured will automatically cease on the date when an insured is no longer actively at work or ceases to be an active full-time employee.  (ECF No. 31-1, at Page ID # 245.)  The plan also provides that, upon such termination, the insured can then convert his or her life insurance policy to an individual policy if "[w]ithin 31 days after such termination . . ., [the insured] appl[ies] in writing for a conversion policy and pay[s] the first premium."  (*Id.* at Page ID # 236.)

Two other policy provisions inform the conversion issue.  In a section titled "Notice of Conversion Privilege," the plan provides:

6

Written notice of the Conversion Privilege and its duration will be given to you at least 15 days before the end of the 31 day period following termination of coverage under the Group Policy.  In the event notice is not given within such time, the time allowed for conversion will be extended to 15 days after the giving of such notice, but will not be extended beyond 60 days after the end of such 31 day period.

(*Id.* at Page ID # 237.)  The plan also provides in a section titled "Death within the Conversion Period" that a "[c]laim may be made for a death benefit if you die during the 31 day period during which your insurance may be converted to an individual policy." (*Id.*)

Defendants argue that they are entitled to judgment on Count I because Del Tonguette was without life insurance coverage when he passed away.  They note that because his last day of employment was October 16, 2009, Del Tonguette was no longer actively at work and ceased to be an active full-time employee as of that date.  This means that he was ineligible for life insurance benefits after that date absent conversion.  If Del Tonguette had received the notice of the conversion privilege contemplated in the plan, Defendants reason, he would have had until November 16, 2009, in which to convert.  Absent the requisite notice, Defendants explain, he had until January 15, 2010, to apply for conversion.[1]  Del Tonguette never applied for conversion and died on January 9, 2010.[2]  The fact that Del Tonguette passed away prior to the extended January 15, 2010 conversion deadline does not matter, according to Defendants.  They argue that the "Death within the Conversion Period" provision set forth above applies on its face only to a decedent who passes way *during* the 31-day period in which conversion may occur and

---

[1]  In its motion, Sun Life states that the end of the 60-day extended period is January 15, 2009, not January 15, 2010.  (ECF No. 30, at Page ID # 218.)  This is obviously a scrivener's error.

[2]  In its motion, Sun Life states that Del Tonguette passed away on January 9, 2011, not January 9, 2010.  (ECF No. 30, at Page ID # 220.)  This is obviously yet another scrivener's error.

7

does not reach the distinct period consisting of the extended deadline created by a failure to give notice of the conversion privilege.

To support their argument, Defendants direct this Court to *Sundstrom v. Sun Life Assurance Co. of Canada*, 683 F. Supp. 2d 594 (W.D. Mich. 2010). In that case, another district judge in the Sixth Circuit addressed facts in which a decedent who was covered under his life insurance plan until March 16, 2006, died on May 4, 2006. Similar to the instant case, that decedent's plan contained a conversion provision, which read:

> Application for the Individual Policy
>
> 1. written applications must be made to Sun Life along with payment of the first premium, within the 31 day period (the 31 day conversion period) following the date the insurance ceases or reduces. If the Employee is not given notice by the Employer of this conversion privilege within 15 days following the date his insurance ceases or reduces, the Employee shall have an additional 15 days to exercise this conversion privilege. In no event will this conversion privilege be extended beyond 60 days following the 31 day conversion period.

*Id.* at 597-98. The *Sundstrom* policy also provided:

> Death Within 31 Days
>
> If the Employee dies during the 31 day conversion period, a benefit will be paid upon receipt of Notice and Proof of Claim, whether or not application for the individual policy or payment of the first premium has been made. The benefit is the amount of Life Insurance the Employee would have been eligible to convert.

*Id.* at 598. The *Sundstrom* judge held that the denial of life insurance benefits was neither arbitrary nor capricious in light of the fact that the decedent had failed to convert his policy.

That judge explained:

> Plaintiff asserts her husband is entitled to benefits under the policy. Plaintiff argues the phrase "the 31 day conversion period" is a phrase defined in the policy. Under the "Death Within 31 Days" provision of the policy, her husband passed away within "the 31 day conversion period." Plaintiff asserts there are 3 different conversion periods provided for under the "Application for the Individual Policy"

provision.  The first 31 day conversion period is the 31 days after the date the insurance policy ceases or reduces.  The second 31 day conversion period is the first 31 days, plus an additional 15 days which is added when the employer does not give the employee notice of the first period.  The third 31 day conversion period is the first 31 days, plus an additional 60 days. Plaintiff asserts the phrase "the 31 day conversion period" refers to all three of these periods.

Defendant Sun Life's decision to deny benefits under the "Death Within 31 Days" provision was not arbitrary or capricious.  After Plaintiff appealed the initial denial, Defendant reached a reasonable conclusion when it interpreted the phrase "the 31 day conversion period" to mean the 31 day period following the date the insurance ceases or reduces.  Defendant also reached a reasonable conclusion when it construed the "Death Within 31 Days" provision as authorizing payment of benefits only when the beneficiary passes during the first 31 days following the date on which the insurance ceases or reduces.  Mr. Sundstrom passed away more than 31 days after March 14, 2006, therefore his estate was not eligible for benefits under the "Death Within 31 Days" provision.

In order to prevail under the Conversion Privilege provision, Plaintiff must have *both* the right to convert Mr. Sundstrom's group policy to an individual policy *and* there must be some circumstances, applicable in this case, which extends the conversion period for 60 days after the initial 31 days following the date on which the insurance policy ceased or reduced.  It is beyond dispute that Mr. Sundstrom never sought to convert his group life policy to an individual policy.  In addition, whether Mr. Sundstrom failed to receive notice of the conversion period from his employer, and thus was afforded an additional 15 days beyond the initial 31, is irrelevant.  It is undisputed that he passed away 3 days after the addition[al] 15 day period expired.

*Id.* at 598-99 (footnotes omitted).  This analysis is instructive to Tonguette's claim.

As noted, the plan at issue here provides:

Written notice of the Conversion Privilege and its duration will be given to you at least 15 days before the end of the 31 day period following termination of coverage under the Group Policy.  In the event notice is not given within such time, the time allowed for conversion will be extended to 15 days after the giving of such notice, but will not be extended beyond 60 days after the end of such 31 day period.

(ECF No. 31-1, at Page ID # 237.)  Similar to the *Sundstrom* plan, this plan provision sets forth

*one* 31-day period, which is specifically characterized in the plan as "*the* 31 day period" and not

*a* 31-day period.  (*Id.* (emphasis added).)  This specific period is defined by the subsequent

9

restrictive clause "following termination of coverage under the Group Policy."  (*Id.*)  That clause defines a particular period of days and serves, in conjunction with the article preceding "31 day period," to narrow the plan's use of that language to one concrete period, *i.e.*, the 31 days immediately following termination of coverage.

Thus, when the plan elsewhere provides that a "[c]laim may be made for a death benefit if you die during the 31 day period during which your insurance may be converted to an individual policy," the use of the restrictive article ("the") and restrictive clause ("during which your insurance may be converted to an individual policy") limit the automatic payment upon death period to the same initial period for conversion.  (*Id.*)  The death provision says *the* 31-day period; it does not say the 91-day period for possible conversion that results absent notice or (even more specific) the 31-day period and/or the extended period.  There is only *one* 31-day period for conversion, with any other 31 days following that period simply falling within what the plan describes as an extended period of no more than 60 days from the end of the 31-day period.

Tonguette of course disagrees with the foregoing reading of the plan.  She posits that the plan is inherently ambiguous in the relevant provisions and that, as a result, this Court must construe the plan against Sun Life, the plan's drafter.  The flaw in this reasoning is that the plan language is not ambiguous.

Rather than being ambiguous, the policy is actually quite precise in defining and adhering to the 31-day period.  There is an express distinction between a period for extended conversion and a period in which benefits are payable upon death even in the absence of conversion.  To conclude otherwise would be to ignore the particular language employed in the plan provisions.

Although the plan sets forth a contingent maximum conversion period of 91 days, the plan never conflates the 31-day period with the extended period in regard to the death within 31 days provision.  Tonguette's subjective perception of ambiguity thus has no foundation within the plan language itself.

Consequently, Sun Life's interpretation does not "render the Notice provision superfluous and without any relevance whatsoever" as Tonguette suggests.  (ECF No. 33, at Page ID # 332.)  Instead, the interpretation recognizes that under the terms of the plan, the notice provision informs only the right to convert and not payment upon death without conversion.  The Court recognizes that the plan thus essentially provides an inherent incentive to Sun Life to withhold notice and then benefit from that action if an individual with a right to convert expires prior to converting.  But it is not within the purview of this Court to hold Sun Life to anything more in this context than providing a rational, reasoned explanation, based on the plan language and the facts, for the coverage decision Sun Life reached.

Tonguette also argues that *Sundstrom* is distinguishable because the policy language involved in that case limited the payment of benefits to the first 31 days of the conversion period, whereas here the policy language contains no such limitation.  This is simply incorrect. Tonguette attempts to make much of the fact that the *Sundstrom* policy contained the heading "Death Within 31 Days" while the policy here contains the heading "Death within the Conversion Period."  Any superficial traction this argument might muster fails when the actual content of those sections is compared.  The *Sundstrom* policy language defined the 31 day conversion period and limited it to the period immediately following the date the insurance ceased.  The policy here permits a claim for a death benefit if the covered individual dies "during

11

the 31 day period during which your insurance may be converted to an individual policy."  (ECF
No. 31-1, at Page ID # 237.)  The substance of the section thus defines the term "Conversion
Period" in the heading in such a way as to align this case with *Sundstrom*.  Applying this
definition, the policy section heading here essentially reads "Death within the 31 day period
during which your insurance may be converted to an individual policy."  Tonguette's gloss on
the policy *sub judice* reads out the specific substance of the policy in order to create ambiguity
based on a heading.  This illogical approach fails to persuade.

Also unpersuasive is Tonguette's reliance on *Canada Life Assurance Co. v. Estate of
Lebowitz*, 185 F.3d 231 (4th Cir. 1999).  The policy involved in that case may have indeed
defined the conversion period as the 31 days following the termination of an insured individual's
employment, and the court of appeals may have indeed construed the death during conversion
period to mean the extended period, but this Court disagrees with this non-binding case and
instead credits the language of the policy.

Similarly unpersuasive is Tonguette's reliance on *Hauth v. Prudential Insurance Co. of
America*, No. C08-3025-MWB, 2010 WL 3168279 (N.D. Iowa Aug. 10, 2010), as well as similar
state court cases.  The policy language in *Hauth* provided that a death benefit would be paid if an
individual died within 31 days after coverage had ceased and while he or she was entitled to
convert.  To the extent that the former requirement can be regarded as analogous to the instant
policy's "31 day period during which your insurance may be converted to an individual policy,"
this Court disagrees with *Hauth*.  That case, like *Lebowitz*, reads out of the policy a condition
that limits a death benefit without conversion.  The benefit without conversion provision is more
narrow than the extended conversion provision; the latter does not inform the former.  Again, the

12

Court recognizes that crediting the death within 31 days provision language could be construed as at odds with the intent of the notice provision.  But the provisions do not have to align. ERISA imposes a right to convert, 29 U.S.C. §§ 1161 & 1162, but it does not impose a duty to pay benefits if an individual dies outside a limited period.  This Court will not discredit the policy language to place into the statutory scheme what Congress did not.

Although Sun Life did not expressly detail in its initial denial its analysis in regard to the extended period for conversion that results from a failure to give notice, this fact does not render its denial decision arbitrary and capricious.  There is no requirement that Sun Life address this plan provision, or others that Tonguette cites, that are irrelevant to the applicable coverage period.  Moreover, Sun Life's ultimate denial of coverage addressed the inapplicable extension provision.  Sun Life ultimately reached a reasonable conclusion when it interpreted the 31-day period to mean the 31-day period following the date the insurance ceased.  It also reached a reasonable conclusion when it construed the "Death within the Conversion Period" provision as authorizing payment of benefits only when a beneficiary passes during the first 31 days following the date on which the insurance ceased.  Because the record does not present arbitrary and capricious conduct by Defendants, they are entitled to judgment on Count I.

### B.  Counts II and III

Both Tonguette and the LoBue Defendants seek summary judgment on Counts II and III. In Count II, Tonguette asserts a breach of fiduciary duty claim against the LoBue Defendants for failure to provide plan documentation under 29 U.S.C. § 1024(b)(4).  That statute provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, [*sic*] plan description, and the latest annual report, any terminal

13

report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  Under 29 U.S.C. § 1132(a)(3), a plan participant, beneficiary, or fiduciary may bring a civil action to obtain appropriate equitable relief to redress the violation of such a duty or to enforce ERISA provisions or the terms of the plan.

Tonguette again targets the LoBue Defendants' alleged failure to maintain and provide plan documents in Count III.  She avers that she never received a summary plan description, which she states apparently does not exist, as well as other documents.  Tonguette also asserts that the documents provided are deficient in meeting ERISA requirements.  She seeks statutory damages and any other relief deemed appropriate under 29 U.S.C. § 1132(c)(1).

The unusual circumstances in which the briefing occurred and the nature of the briefing present threshold complications that necessitate consideration before this Court can reach the merits of these claims.

Shortly after the filing of this litigation, the Magistrate Judge set a dispositive motions deadline of January 28, 2013.  (ECF No. 14, at Page ID # 38.)  This Court recognized that deadline in its subsequent Scheduling Order.  (ECF No. 15.)  After Tonguette filed an amended complaint (ECF No. 23) on December 20, 2012, however, Defendants responded by filing motions to dismiss (ECF Nos. 24, 26) in January 2013.  The parties were in the process of briefing the motions to dismiss when the dispositive motions deadline arrived.  The parties then filed their motion for judgment on the administrative record/summary judgment motions.  (ECF Nos. 30, 32, 33.)  After the parties filed their dispositive motions did they conclude briefing the motions to dismiss.  Briefing on the dispositive motions then continued, and it was only after all

of the motions had been briefed that this Court was able to file its Opinion and Order on the motions to dismiss.  (ECF No. 44.)

This atypical, overlapping motions practice complicates addressing the summary judgment motions cleanly.  For example, the LoBue Defendants' one-and-one-half page dispositive motion simply adopts Sun Life's briefing and the LoBue Defendants' own motion to dismiss memorandum in support.  (ECF No. 32, at Page ID # 314.)  This is troubling for two basic reasons.

First, Sun Life's dispositive motion only incorporates the arguments raised in its motion to dismiss (and not elsewhere) "to the extent necessary."  (ECF No. 30, at Page ID # 216 n.3.)  Such incorporation proved unnecessary for Sun Life because via concession it obtained dismissal of Count II in the April 29, 2013 Opinion and Order (ECF No. 44, at 499) and because Tonguette did not assert Count III against Sun Life (ECF No. 23 ¶¶ 95-104).  Thus, there has been no incorporation of Sun Life's motion to dismiss arguments into Sun's Life's dispositive motion, which means that if the LoBue Defendants intended to reach those arguments via incorporation, they have not.

Second, in the non-incorporated motions to dismiss reply memorandum filed by the LoBue Defendants, they raised for the first time a new argument, which this Court rejected consideration of in its April 29, 2013 Opinion and Order.  (ECF No. 44, at Page ID # 502-03.)  The LoBue Defendants' dispositive motion does not incorporate this argument.  If this Court starts to go down the motion to dismiss rabbit hole and consider the incorporated motion to dismiss, fairness would likely dictate that the Court also consider the corresponding non-incorporated memorandum in opposition and the non-incorporated reply memorandum.

15

Consideration of this last document would lead to Tonguette's proffered motion to dismiss sur-reply, which this Court declined to consider in the motions to dismiss analysis because the Court declined to let the LoBue Defendants raise an argument for the first time in the motion to dismiss reply memorandum.

Also troubling is that Tonguette's memorandum in opposition to the LoBue Defendants' dispositive motion is a memorandum in opposition to Sun Life's dispositive motion that Tonguette states in a footnote "shall be construed as also responding to the LoBue Defendants' Motion for Judgment."  (ECF No. 40, at Page ID # 448.)  Presumably, that "Motion for Judgment" reference is meant to encompass what is essentially the summary judgment portion of the LoBue Defendants' dispositive motion because it is only a summary judgment component that could pertain to Counts II and III.  But on the LoBue Defendants' end, all the summary judgment component does is incorporate some but not all of the motion to dismiss briefing.  And on Tonguette's end, her "combined" memorandum in opposition does not even address Counts II and III, which would suggest abandonment of these claims, but for the fact that Tonguette pursues summary judgment on these claims in her own motion for summary judgment.

This is a morass.  Part of the fault lies with the undersigned; this Court failed to see this coming and halt dispositive motions briefing when Defendants filed the motions to dismiss.  Part of the fault lies with the frustrating practice of arguing for or against summary judgment by incorporating only select motion to dismiss briefing.  Together these actions have complicated what should be the easiest part of addressing Counts II and III: ascertaining precisely which arguments (and possibly evidence) the Court can consider in regard to these claims.

It therefore makes little sense to this Court to attempt to parse out what parts of the

16

motion to dismiss briefing may or may not be relevant to the remaining claims when any error on this Court's part might overlook a potentially dispositive argument.  It is also not this Court's duty to cobble together fragments of the parties' briefing into an argument that the Court can then proceed to address.  Accordingly, in an effort to bring clarity to the consideration of Counts II and III on summary judgment–and frankly, to force the remaining parties to present their arguments in the summary judgment context, keeping in mind the posture of the evidence and the case as they have developed since the motions to dismiss briefing–this Court **DENIES WITHOUT PREJUDICE** the motions in regard to Counts II and III.  (ECF Nos. 32, 33.)  The Court also **ORDERS** that, on or before August 26, 2013, Tonguette and the LoBue Defendants shall file new summary judgment motions on Counts II and III.  Summary judgment briefing shall then proceed in accordance with the default schedule set forth in the Local Civil Rules, *see* S. D. Ohio Civ. R. 7.2(a)(2), and the new motions shall come on for a non-oral hearing on October 11, 2013.[3]

### III.  Conclusion

The Court **GRANTS** Sun Life's motion for judgment on the administrative record in regard to Count I (ECF No. 30), **GRANTS** the LoBue Defendants' motion for judgment on the administrative record in regard to Count I (ECF No. 32), and **DENIES** Tonguette's motion for judgment on the administrative record in regard to Count I (ECF No. 33).  The Court also **DENIES** Sun Life's motion as moot in regard to Count II (ECF No. 30) and **DENIES WITHOUT PREJUDICE** the LoBue Defendant's motion for summary judgment (ECF No. 32)

---

[3] Obvious notice to the parties: *No argument by incorporation.*  If you want this Court to consider it, put it into your summary judgment briefing.

17

and Tonguette's motion for summary judgment (ECF No. 33) in regards to Counts II and III. The Court **ORDERS** that the LoBue Defendants and Tonguette shall file new summary judgment motions on Counts II and III on or before August 26, 2013, and these motions shall come on for a non-oral hearing on October 11, 2013.

      **IT IS SO ORDERED**.

                                          _____/s/ Gregory L. Frost_____
                                          GREGORY L. FROST
                                          UNITED STATES DISTRICT JUDGE